(No. 3581—

HUGH ALLISON, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 13, 1942.*

*Rehearing denied May 12, 1942.*

ROY A. PTACIN, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

CHIEF JUSTICE DAMRON delivered the opinion of the court:

This man files his complaint against the State for an injury received by him in the course of his employment for the Department of Public Welfare, while working for the Chicago State Hospital, 6500 Irving Park Boulevard, Chicago, Illinois, an institution for the care of persons mentally unbalanced. He seeks an award of Five Hundred Fourteen Dollars and Twenty-five Cents ($514.25), for twenty-five (25) per cent for loss of use of his right hand.

The complaint states that on January 8, 1941, while employed in said institution, as an attendant, he was struck across his right hand with the handle of a swab by a patient. Claimant suffered a fracture of the fifth metacarpal bone involving, temporarily, the fourth metacarpal.

The complaint also states he is twenty-six years of age, married, having one child under the age of sixteen years, namely Gwendolyn Allison age five years at the time of the accident, and that he resides at said institution. That his average yearly earnings amount to approximately One Thousand ($1,000.00) Dollars; that nothing had been paid on account of this injury, either for temporary total, permanent partial or total disability. He claims as compensation Twelve Dollars and Ten Cents ($12.10) per week for one hundred seventy (170) weeks, under Paragraph E, of Section 8 of the Workmen's Compensation Act, and a further sum for temporary total disability, for whatever time, if any, that he is not reimbursed for.

The evidence taken in Chicago on April 10, 1941, shows that he first was employed by the Department of Public Welfare on November 11, 1940, and worked continuously from that time until March, 1941, when he resigned to accept a mechanic's job at Abingdon, Illinois, at a salary of One Hundred ($100.00) Dollars per month. At the time of the injury

he was earning Fifty-two Dollars and Fifty Cents ($52.50) and maintenance.

The evidence shows that he was treated at the institution after the accident by the night nurse, who rendered first aid. The following day he reported to the hospital of said institution where Dr. Olsman taped the injury, and later x-rays were taken. The hand was swollen and painful on the outside below the wrist. He had never injured the hand prior to January 8, 1941. This claimant continued to work at his occupation as an attendant, losing no time, and he occasionally had his hand dressed with adhesive strapping. On January 15, 1941, the hand was put into a cast by Dr. Zolt, but about the day of February 1, 1941, the claimant removed the cast without advice of his physician, and apparently no treatment was given him after that date. On February 24, 1941, his hand was examined by Dr. Albert C. Field, of Chicago, for the purpose of testifying. X-rays were made by Dr. Field, and he testified that they show a comminuted fracture of the fifth metacarpal with some displacement, but was not well healed at that time. He also testified that there was a separation, and a deformity at the site of the fracture. He states as his opinion, that there is a twenty-five (25) per cent disability of said hand resulting from said injury.

Dr. Lewis Olsman, employed by the Chicago State Hospital, testified that all the effects of the acute injury had subsided, that there remained at that time a deformity at the base of the fifth metacarpal. That patient had weakness and incomplete flection of the fifth metacarpal, and complained of pain on forceable and complete flexion of the fifth finger. He stated that the patient was able to approximate all the fingers to the palm, and was able to approximate all the fingers to the thumb. There was some evidence of weakness in the fourth finger of the right hand. He stated that he was inclined to feel "that the permanent disability will be closer to twenty (20) per cent than twenty-five (25) per cent."

On cross examination the claimant was asked the following questions:

Q. With that hand in the condition it is in, you are able to earn a salary of One Hundred ($100.00) Dollars a month as a mechanic?

A. Yes sir.

Q. Your hand is picking up some strength isn't it?

A. It is picking up some strength, it is better than it was when it was hurt, and it is better than it was two weeks after it was hurt.

Q. And you are able to use it now as a mechanic?

A. I am able to use it with the exception of the little finger.

Q. It is just a little weak?

A. It is weak, I cannot exert pressure.

Claimant is not claiming any compensation for loss of time, he having been paid in full his wages from the time of the accident until he resigned.

The remaining question to be decided is whether the claimant is entitled to compensation for specific loss under Section 8 of the Workmen's Compensation Act. The claimant bases his claim on specific loss of the use of a hand, but this cannot be classified as a hand injury, because the record supports a specific loss of the use of the little finger only. We make a finding of fifty (50) per cent permanent partial loss of use of claimant's little finger of the right hand.

The record establishes that the petitioner and respondent were, on January 8, 1941, operating under the provisions of the Workmen's Compensation Act. That on the date last above mentioned said claimant sustained accidental injuries which did arise out of and in the course of the employment; and that notice of said accident was given said respondent, and claim for compensation on account thereof was made on said respondent within the time required under the provision of said Act.

That the earnings of the claimant during the year, next preceding the injury, were Nine Hundred Eighteen ($918.00) Dollars, included therein is the sum of Twenty-four ($24.00) Dollars per month, the court taking into consideration the fact that the Department of Public Welfare considers maintenance to be of that value, and that the average weekly wage was Seventeen Dollars and Sixty-five Cents ($17.65).

That the petitioner at the time of the injury was twenty-six years of age, and had one child under the age of sixteen years.

That the necessary first aid, medical, surgical, and hospital services have been provided by the respondent herein.

That claimant is entitled to have and receive from said respondent the sum of Eleven ($11.00) Dollars per week for

a period of ten (10) weeks, representing fifty (50) per cent loss of use of the fourth finger, commonly called the little finger, as provided in Paragraph E, of Section 8, and the further sum of Eleven ($11.00) Dollars as provided in Paragraph L, of Section 5, of said Act, as amended, for the reason the injury sustained occurred subsequent to July 1, 1939.

That said claimant is now entitled to have and receive from the respondent the sum of One Hundred Twenty-one ($121.00) Dollars. That all of said compensation has accrued and it is now payable in a lump sum.

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved June 30, 1941, and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Revenue fund in the manner provided for in such Act.